**In re MIAMI OPTICAL EXPORT, INC., Debtor.**

**Bankruptcy No. 88–03710–BKC–TCB.**

United States Bankruptcy Court,
S.D. Florida.

May 31, 1989.

Phillips and Phillips, P.A., Miami, Fla., for debtor-in-possession.

Tew Jorden Schulte & Beasley, Miami, Fla., for Official Committee of Unsecured Creditors.

David Braverman Associates, Inc., Ft. Lauderdale, Fla., for debtor-in-possession.

## ORDER ON FEE APPLICATIONS

THOMAS C. BRITTON, Chief Judge.

The debtor's amended plan (CP 43), as subsequently amended further on May 2, 1989 (CP 52) and May 11 (CP 57), was confirmed on May 17 (CP 59), upon the recommendation of the U.S. Trustee. At the confirmation hearing, held May 15, all fee applications were also heard. This Order addresses those applications.

█ The presently filed fee applications (CP 45, 47, 49, 58) total $22,204, none of which has been opposed. The absence of objections is not evidence of value and affects in no way the court's duty to examine carefully all bankruptcy fee applications to prevent excessive charges. *York Intern. Building, Inc. v. Chaney*, 527 F.2d 1061, 1068 (9th Cir.1975); *Matter of Nor–Les Sales, Inc.*, 32 B.R. 900, 902 (Bankr.E.D. Mich.1983) (collecting some of the precedent on this point).

### The Lodestar

Since *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), judicial review of fee applications focuses on the lodestar: the product of the hours reasonably expended times a reasonable hourly rate, adjusted for the results obtained. Our Circuit, in *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1298–1304 (11th Cir.1988), has recently illuminated this process.

### Debtor's Counsel

█ The debtor's attorney has applied for fees of $14,387 for 67.25 hours spent plus an estimated 15 additional hours, at an hourly rate of $175, less a $7,500 retainer, and expenses or $536.60. (CP 49).[1] The services were provided over a seven-month period, August 23, 1988 to March 28, 1989.

Like the other two fee applicants, this is a fully qualified applicant, who did successfully what he was employed to do. This

---

**1.** I do not overlook the fact that this application was filed after the March 20 deadline set by this court's Order. (CP 38). The deadline was ex-

tended for *this* applicant, (CP 42), and the application was timely.

attorney, with over 40 years' experience as a bankruptcy specialist, is exceptionally qualified.

I accept as reasonable his hourly rate and I accept the reasonableness of the time he has spent, but he has provided no basis for his estimate of 15 additional hours. In this very small case, he should be able to make a first distribution (substantial consummation) and submit a motion for a final decree terminating this case in half that time. His fee is approved, therefore, in the amount of $13,081.25.

He is also entitled to reimbursement for his expenses to date of $536.60 plus an additional $36.60 for mailing the creditors' first distribution with which he may enclose his final report and motion for a final decree.

He has received a prepetition retainer of $7,500 and a cost deposit of $2,500, both of which must be credited against the foregoing sums, leaving a balance payable to this applicant of $3,654.45.

### Debtor's Accountant

The retention in this case of the debtor's prepetition accountants was authorized as of September 16, 1988. (CP 23). They seek $3,680 for 75.5 hours at an average hourly rate of $48.74 spent over a six-month period, September 16, 1988 to March 16, 1989. (CP 47). The application is approved.

### Attorneys for Creditors' Committee

■ The timely application (CP 45) of the attorneys for the creditors' committee sought $3,600, including estimates for costs and future services. A supplemental application (CP 58) *reduced* the estimates. This applicant now requests $3,241.50 in fees for a total of 17.7 hours at an average hourly rate of $183.14 spent during the months between February 15, 1989 and April 28, 1989.

I accept the reasonableness of the time spent, but see no reason why this debtor's estate should pay more than the $175 hourly rate which enabled the debtor to retain the most experienced bankruptcy specialist in this district, which I find to be the appropriate lodestar for these services.

■ The applicant has also requested reimbursement for $243.58 expenses. I disagree with respect to $79.80 charged for "photocopy, in house" and "postage", which I have considered overhead in approving an average hourly charge of $175. This application is, therefore, approved in the total amount of $3,261.28.

### Clerk's Fees

The Clerk's mandatory fees (CP 55) of $84.25 are approved and shall be paid as an administrative charge.

### U.S. Trustee's Costs and Charges

As specified in the confirmed plan (CP 43, ¶ 1.01): "all costs and charges due U.S. Trustee and other claims arising after the commencement of the Chapter 11 proceedings" are also administrative claims approved by this court.

### Payment of Foregoing Administrative Expenses

■ All administrative expenses, as approved by this Order, except the sums payable to the debtor's counsel, shall be paid "in full cash" if and when the confirmation order of May 17, 1989 (CP 59) "becomes final and non-appealable, provided that no stay of the confirmation order is then in effect." (CP 43, ¶ 1.01 and ¶ 8.05).

Because 11 U.S.C. § 1129(a)(9)(A) requires such payment "on the effective date of the plan" (which I have just construed in accordance with ¶ 6.01 of the confirmed plan) "except to the extent that the holder of a particular claim has agreed to a different treatment of such claim" (§ 1129(a)), and because debtor's counsel as disbursing agent has reported that only $180.55 (payable to Uvex Winter Optical, Inc.) is enough to satisfy the preconfirmation deposit required by this court under B.R. 3020(a) "of the consideration required by the plan to be distributed on confirmation", I presume this completely inadequate deposit results in part at least from the

agreement of debtor's counsel to accept delayed payment.

His payment shall therefore be deferred until such time and in such amounts as will not result in debtor's default in the payment of all other administrative expenses and all other sums to be distributed on confirmation, which I construe to be the date the confirmation order becomes final and unappealable.

DONE and ORDERED.