**In re KENNETH LEVENTHAL & COMPANY, Appellant,**

v.

**SPURGEON HOLDING CORPORATION, Appellee.**

No. 92 C 7445.

United States District Court, N.D. Illinois, E.D.

March 29, 1993.

**512**

Neal L. Wolf, Barbara Jean Wang, Winston & Strawn, Chicago, IL, for Kenneth Leventhal & Co.

Daniel J. Donnelly, McDermott, Will & Emery, Chicago, IL, for Spurgeon Holding Corp.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is Appellant Kenneth Leventhal & Company's (KL & C) appeal from a bankruptcy court order partially disallowing KL & C's final application for compensation and reimbursement of expenses. For the following reasons, the bankruptcy court's order is affirmed.

### FACTS

KL & C, an accounting firm, had been employed by the Official Committee of Unsecured Creditors (the "Committee") of Spurgeon Holding Corporation, which had been a debtor in a Chapter 11 bankruptcy case. In the seven-month period after its employment, KL & C provided a wide range of accounting services, all of which were performed at the specific request of either the Committee or the Committee's counsel, Jones, Day, Reavis & Pogue, and all of which were within the scope of the bankruptcy court order approving the employment of KL & C.

On February 28, 1992, after entry of the order confirming the Debtor's amended plan of reorganization, KL & C filed its final application for allowance of compensation and reimbursement of expenses, seeking $229,694 in fees and $9,452 in expenses. Objections were filed by the reorganized debtor ("Reorganized Spurgeon") on March 19, 1992, challenging the application on the following grounds: failure to follow required organization of fee applications; performance of unnecessary services; performance of noncompensable services; performance of administrative and clerical work by senior personnel; duplication of services relating to Rule 2004 examinations; duplication relating to internal meetings; use of nonsensical categories that obscured the extent of duplication of services; excessive hourly compensation; and excessive total compensation.

On March 20, 1992, the bankruptcy court conducted the initial hearing on the fee application. At that time the bankruptcy court warned KL & C that its application did not conform to the fee application standards of the Northern District of Illinois and suggested that KL & C file an amended application. At a subsequent hearing on April 1, 1992, the bankruptcy court reiterated its nonconformity concern as to KL & C's application and warned KL & C that failure to comply with this district's standards for fee applications may result in substantial reductions in its requested compensation due to the improper organization of its application. KL & C failed to amend its application and, instead, filed a responsive brief to Reorganized Spurgeon's objections.

KL & C's fee application was organized by reference to each individual who worked

on the matter, rather than by activity. Consequently, Reorganized Spurgeon provided the bankruptcy court with a computer breakdown of KL & C's time entries, which identified duplicative entries, excessive conferencing, and certain other activities for which fee recovery was impermissible. Relying heavily on Reorganized Spurgeon's computer report, the bankruptcy court issued its preliminary findings as to which of KL & C's entries would be disallowed and the basis for the disallowance. The bankruptcy court reserved final ruling on its preliminary findings so that it could receive additional evidence on five specific issues: (1) market rate charged and paid for accounting personnel; (2) market rate charged and paid for word processing and other charges; (3) necessity of site visits; (4) explanation of a KL & C expense described as "computer rental surcharge;" and (5) identification of certain entries pertaining to certain Bankruptcy Rule 2004 examinations.

The bankruptcy court conducted an evidentiary hearing on the five discrete issues on June 3, 1992, and on October 2, 1992, the bankruptcy court entered an order allowing KL & C fees in the amount of $156,579 and expenses in the amount of $2,949. The order was accompanied by a 30–page report detailing every time entry that was disallowed and the basis for the disallowance.[1] Reorganized Spurgeon filed a motion to modify the order to correct mathematical and categorical errors that inadvertently inflated the proper amount to be allowed. After receiving both oral and written responses from KL & C, which acknowledged the errors, the bankruptcy court entered an order on September 30, 1992, allowing fees in the amount of $133,294.50 and expenses in the amount of $2,949.

## DISCUSSION

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed.R.Bankr.P. 8013. Accordingly, a district court cannot overturn a bankruptcy court's fee award "absent an abuse of discretion or a clearly erroneous finding of fact." *In re Farwell,* 77 B.R. 198, 199 (N.D.Ill.1987). In defining "clearly erroneous," the United States Supreme Court stated:

> A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty ... if it undertakes to duplicate the role of the lower court.... If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.

*Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citations omitted).

KL & C argues that the bankruptcy court ignored its evidence regarding the billing and collection practices of both KL & C and the accounting profession, thereby erroneously rejecting controlling case law governing the evaluation of fee applications in bankruptcy proceedings. Specifically, KL & C argues that the bankruptcy court erroneously applied its own unenunciated and unsubstantiated standards and

---

1. After conducting the evidentiary hearing, the bankruptcy court decided to accept the hourly rate of KL & C's professionals, allowed full compensation for site visits, and full reimbursement for several other expenses.

guidelines regarding compensability of various service and expenses.

As an initial matter, although the Bankruptcy Rules themselves do not specify any particular format that must be adopted by a party petitioning for fees, bankruptcy courts have nonetheless adopted guidelines by which all fee applications are evaluated. *See In re Pettibone Corp.*, 74 B.R. 293, 301–2 (Bankr.N.D.Ill.1987); *In re Wildman*, 72 B.R. 700, 708–09 (Bankr.N.D.Ill. 1987). At the initial hearing on KL & C's fee application, the Bankruptcy Judge warned KL & C that its application did not conform with the fee application standards for the Northern District of Illinois. The bankruptcy court noted that because KL & C's application was itemized chronologically by professional, rather than chronologically by activity or project, it did not conform to the standards set forth in *Wildman* and therefore did not lend itself to reasoned analysis. Despite KL & C's failure to comply with the requirements of this district and the suggestions of the bankruptcy court, Judge Wedoff expressly declined to order an across-the-board reduction on the basis of the improper organization of the application. Instead, the bankruptcy court disallowed a portion of KL & C's requested fees and expenses because KL & C failed to follow the well-established requirements of 11 U.S.C. § 330.

■ Under § 330 of the Bankruptcy Code, a professional employed in a bankruptcy case is entitle to "reasonable compensation for actual, necessary services" and "reimbursement of actual, necessary expenses." 11 U.S.C. § 330(a)(1) and (2). The standards for determining what is reasonable, actual, and necessary were articulated in the *Wildman* decision. Applying those standards, the bankruptcy court reduced KL & C's requested compensation for, among other reasons, insufficient description of services, unnecessary duplication, excessive intra-office conferences, improper staffing of projects by senior personnel, and performance of unnecessary services. The bankruptcy court further allowed reimbursement of expenses in an amount less than KL & C requested because of the noncompensable nature of certain expenses.

KL & C does not challenge the bankruptcy court's findings that various services and expenses were insufficiently described, duplicative, or unnecessarily staffed by several professionals. Instead, KL & C contends that the bankruptcy court is precluded as a matter of law from reducing fees and expenses because accounting firms routinely are paid by clients for such duplication, inefficiency, and excess. As such, KL & C claims that the bankruptcy court erroneously rejected the doctrine enunciated by the Seventh Circuit in *In the Matter of Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir.1992).

In *Continental*, the Court of Appeals reversed a district court order reducing attorneys' fees requested by the prevailing party in a class action litigation. *Continental* did not supersede or abrogate the requirement of § 330 that services be reasonable, actual, and necessary; however, *Continental* provides a two-part analysis for the evaluation of fee applications. First, *Continental* directs courts to look to the market to determine the appropriate hourly rate for a professional and to decide whether certain expenses are properly reimbursable. 962 F.2d at 568–69, 570. Second, as to quantitative and qualitative assessments of the services performed and expenses incurred, *Continental* directs courts to disallow specific time entries and to explain the basis for any disallowance. *Id.* at 570.

Although KL & C argues to the contrary, the bankruptcy court expressly followed *Continental* to the extent that that decision is consistent with § 330. The bankruptcy court rejected Reorganized Spurgeon's objection that the $350 rate of KL & C partner Guy Ackerman was excessive and, instead, accepted KL & C's evidence that Ackerman's rate was an appropriate market rate. Similarly, the bankruptcy court determined that certain expenses were allowable because they would be reimbursed by the marketplace. As to the reductions made to KL & C's fee request, the bankruptcy court painstakingly

detailed and explained the entries that were disallowed and commented on the reasons for disallowance at several hearings.

■ KL & C argues that *Continental* curtails a bankruptcy court's power to reduce the fees of a professional if the professional can demonstrate that the market for its services routinely pays the bills, even if the professional's engagements involve duplication of services or excessive intra-office conferences. Despite KL & C's contention, *Continental* does not diminish the bankruptcy court's duty to independently examine the reasonableness of the fees requested. *See In re Price*, 143 B.R. 190, 192, 194–96 (Bankr.N.D. Ill.1992) (applying *Continental*, bankruptcy court disallowed awarding fees because of insufficient description of services, excessive billing increments, and excessive intra-office conferencing). *Continental* bolsters the established requirement that attorneys present detailed records of their actual and necessary services under § 330. This requirement enables a bankruptcy court to fulfill its obligations to examine carefully the requested compensation in order to ensure that the claimed expenses are justified. *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir.1985). A bankruptcy judge has the broadest discretion to review and question applications for compensation, and has the inescapable statutory responsibility to do so.

■ In support of its fee application, KL & C presented evidence that its services were within its court-approved scope of employment, were performed at the request of the unsecured creditors' committee, were of the kind customarily rendered in comparable non-bankruptcy matters, and were consistent with professional standards and guidelines. Because Reorganized Spurgeon failed to controvert any of this evidence, KL & C contends that the bankruptcy court's findings of fact were clearly erroneous. Despite KL & C's contention, whether services rendered by professionals are actual, necessary, and reasonable are factual issues that do not arise solely upon objections by interested parties or the court, but rather arise upon submission of the fee application. *Pettibone*, 74 B.R. at 299.

■ The burden of proving entitlement to fees is, in all fee matters, on the applicant. *In re Lindberg Prods., Inc.*, 50 B.R. 220, 211 (Bankr.N.D.Ill.1985). Even if no objections are raised to a fee request, a bankruptcy court is not obligated to award the fee as prayed. Indeed, a bankruptcy court "has the independent authority and responsibility to determine reasonableness of all fee requests, regardless of whether objections are filed." *Pettibone*, 74 B.R. at 299–300; *In re NRG Resources, Inc.*, 64 B.R. 643, 650 (W.D.La.1986); *see also* 2 Collier of Bankruptcy, ¶ 328.02 at 328–8 (15th Ed. 1986) (bankruptcy court retains ultimate responsibility for ensuring fee award falls within parameters of § 330). The bankruptcy court found that, despite KL & C's evidence, KL & C failed to meet its burden of proof as to the reasonableness of the entries that the bankruptcy court subsequently denied. The mere fact that Reorganized Spurgeon failed to present any evidence in opposition to KL & C's evidence does not render the bankruptcy court's denial of certain entries erroneous. To the contrary, the bankruptcy court's analysis of KL & C's fee application was thorough and well-reasoned.

■ As a general rule, professionals making an application for fees should make a good faith effort to exclude from a fee request hours that are "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983) (attorney applying for statutory attorney's fees ethically obligated to exclude such hours from fee petition). The standard of § 330 is that compensation be awarded for actual and necessary services, and this standard mandates that petitioners exercise billing discretion in bankruptcy fee matters. A debtor's estate should not bear the burden of such non-compensable activities as: duplication of services, *In re Liberal Mrkt. Inc.*, 24 B.R. 653, 664 (Bankr.S.D.Ohio 1982); incessant conferring among professionals, *In re R & B Institutional Sales, Inc.*, 65 B.R. 876, 882 (Bankr.W.D.Pa.1986);

**516**

unnecessary participation by multiple professionals, *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 583 (Bankr.D.Utah 1985) (court appearances); performance of services by inappropriate parties, *In re Continental Ill. Sec. Litig.*, 572 F.Supp. 931, 933 (N.D.Ill.1983) (senior partner rates paid only for work warranting attention of senior partner); unnecessary legal research and document review, *Continental*, 572 F.Supp. at 933; and disproportionate amount of time spent on fee petition preparation, *Pettibone*, 74 B.R. at 304. In its review of KL & C's fee application, the bankruptcy court identified a series of entries which it concluded were excessive, redundant, or otherwise unnecessary, and consequently found that such entries were not actual and necessary hours reasonably expended by KL & C professionals in the performance of their obligation to the Committee. The bankruptcy court, after conducting an evidentiary hearing on KL & C's fee petition, articulated its reasons for partially denying KL & C's fee application, and KL & C has not questioned these specific factual determinations. Although KL & C claims the bankruptcy court's decision regarding KL & C's fee application was clearly erroneous, the court is not left with the definite and firm conviction that a mistake has been committed. Accordingly, the bankruptcy court's specific denial of certain entries contained within KL & C's fee application was not clearly erroneous. Therefore, the court affirms the Order of the bankruptcy court in its entirety.

### CONCLUSION

For the foregoing reasons, the court affirms the bankruptcy court's order awarding $136,243.50 in fees and expenses to KL & C for its services.

IT IS SO ORDERED.